UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-60393-LEIBOWITZ/STRAUSS

**DEMETRIUS CROSS,**

    Plaintiff,

v.

**JERMAINE JOHNSON,** *et al.*,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

**THIS MATTER** came before the Court upon Defendants' Motion for Summary Judgment ("Motion") [DE 47]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 69]. I have reviewed the Motion, the Response [DE 56] and Reply [DE 60] thereto, all other summary judgment materials, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED** as to Plaintiff's federal claims (false arrest and excessive force) and that the Court **REMAND** Plaintiff's remaining state-law claims to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

**BACKGROUND**

A. **Plaintiff's Statement of Material Facts**

In response to Defendants' Motion and Statement of Material Facts, Plaintiff filed his Statement of Material Facts. [DE 59]. Unfortunately, Plaintiff's Statement of Material Facts disregards numerous requirements of Federal Rule of Civil Procedure 56 and Local Rule 56.1. For

1

instance, Plaintiff's Statement of Material Facts does not "clearly challenge any purportedly material fact asserted by [Defendants] that [Plaintiff] contends is genuinely in dispute." S.D. Fla. L.R. 56.1(a)(2). Plaintiff does not provide any, much less "pinpoint," citation for twenty out of twenty-five facts. For the five facts that contain some form of citation, only three comport with the Local Rule and contain a page number or pincite. *See* S.D. Fla. L.R. 56.1(b)(1)(B); *see also* Fed. R. Civ. P. 56(c)(1). Plaintiff's facts do not "correspond with the order and paragraph numbering format used by" Defendants, do not "use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed,'" and do not contain a section with Plaintiff's material facts that Plaintiff contends are material to the Motion. S.D. Fla. L.R. 56.1(b)(2). Indeed, Plaintiff's Statement of Material Facts is little more than a nearly-verbatim copy of the "Background Facts" allegations in his Second Amended Complaint. *Compare* [DE 59] *with* [DE 1–2].

  The Local Rules' requirements governing summary judgment are not trivial formalities that a litigant can ignore. Instead, "Local Rule 56.1 serves the valuable purpose of crystallizing the relevant factual disputes for the Court by allowing the non-movant to contest the specific factual assertions in each paragraph of the movant's statement." *Laremore v. Holiday CVS, LLC*, No. 20-CIV-61650-RAR, 2021 WL 3053348, at *3 (S.D. Fla. July 20, 2021); *see also Cannon v. Delray Realty Assocs., LLC*, No. 20-81178-CIV, 2021 WL 2661462, at *1 (S.D. Fla. Apr. 26, 2021) ("When a party properly complies with Local Rule 56.1, it is relatively easy for a court to determine whether there is a genuine disputed issue of fact. Failure to follow the letter and spirit of this imperative local rule imposes on the Court an arduous process, and, in any event, generates unnecessary work for the court and its staff." (internal quotation marks and citation omitted)); *Bejerano v. Flex Fla. Corp.*, No. 18-20049-CIV, 2020 WL 4059604, at *3 (S.D. Fla. July 20, 2020)

("Not only does Local Rule 56.1, like the other local rules, have 'the force of law,' it also serves more than a technical purpose: '[T]he rules clear procedural directive is intended to reduce confusion and prevent the Court from having to scour the record and perform time-intensive fact searching.'" (quoting *United States v. Marder*, 183 F. Supp. 3d 1231, 1235 (S.D. Fla. 2016) (alteration in original))).

Due to the multitude of deficiencies within Plaintiff's Statement of Material Facts, I find it appropriate to disregard the twenty-two non-compliant facts and deem admitted all of Defendants' facts that are "supported by properly cited record evidence." *See* S.D. Fla. L.R. 56.1(c), (d).

**B. Undisputed Facts**

On June 23, 2015, Plaintiff, Demetrius Cross ("Cross"), was driving a vehicle in North Lauderdale, Florida.[1] Defendants' Statement of Material Facts ("DSMF") [DE 46] ¶ 1. Cross' cousin, Zevante Bharat ("Bharat"), was a passenger in the vehicle. *Id.* ¶ 3. Bharat was not wearing his seatbelt. *Id.*

Defendant, Jermaine Johnson ("Johnson"), is a Deputy Sheriff with the Broward County Sheriff's Office. *Id.* ¶ 4. On June 23, 2015, Johnson, while driving in the same area as Cross, observed that Bharat was not wearing a seatbelt. *Id.* ¶¶ 5–7. Johnson noticed Cross and Bharat looking at him and signaled to them to have Bharat put on his seatbelt. *Id.* ¶ 8. In response, Cross lowered his window and began recording Johnson with his phone. *Id.* ¶ 9.[2] Johnson then told Cross and Bharat to put on Bharat's seatbelt. *Id.* ¶ 10.

---

[1] Defendants state that the incident occurred in January 2015, but the cite Defendants provide, as well as Cross' facts, establish that the incident occurred in June. Therefore, it appears this is simply a scrivener's error.

[2] Defendants conventionally filed the cell phone recording ("Recording") with the Court. [DE 39]. However, the Recording only begins when Johnson's vehicle is side-by-side with Cross', with Johnson's police lights activated, and both vehicles in the middle of the road. Additionally, most of the Recording only contains audio without video.

3

Because Cross was not looking where he was driving, Johnson slowed his vehicle down. *Id.* ¶ 11. Cross then slowed his vehicle down as well, eventually coming to a complete stop in the middle of a two-lane street. *Id.* ¶ 12. Once Johnson's and Cross' vehicles were stopped side-by-side, Johnson, with his police lights flashing (on both the front and side of his vehicle), instructed Cross to "pull over" and "move [his] car up" several times. *Id.* ¶ 13; (Recording at 0:03–0:45)[3]. But Cross did not pull over. Instead, he responded, "No, you pull up, and then I'm a pull up, man." [DE 45–1] at 2. After some back-and-forth between Johnson and Cross, Johnson exited his vehicle and approached Cross' vehicle. DSMF ¶ 14; (Recording at 0:15–0:25). Johnson again instructed Cross to "pull [his] car up" several times. DSMF ¶ 13; [DE 45–1] at 3. Cross continued to go back-and-forth with Johnson about moving the vehicle up and said he was "going to pull [the vehicle] up" several times but never moved the vehicle. [DE 45–1] at 3. After Johnson repeatedly ordered Cross to "pull [his] car up," while Cross continued to say he was going to move up but never did, Cross ended the interaction with "Didn't you hear me say I'm about to pull up, man? You better be ready, boy." *Id.*

The Recording, which at this moment only captured the audio, indicates Cross began to drive his vehicle. (Recording at 0:45–1:00). Johnson alleges (and Cross does not sufficiently dispute) that Cross accelerated his vehicle, sped off, and only stopped once Johnson activated his siren. DSMF ¶¶ 14–15. The audio recording indicates about twenty to thirty seconds elapsed between Cross' last interaction with Johnson before Cross moved his vehicle and when Johnson approached Cross' vehicle on foot the second time. (Recording 0:47–1:16). During those twenty to thirty seconds, the recording captured Cross and Bharat engaged in a short conversation wherein they contemplated what would happen next. *Id.*

---

[3] Defendants have filed a transcript of the Recording. *See* [DE 45–1].

When Cross pulled over, Johnson approached the vehicle and instructed Cross to put his window down, hang up his phone, and put it away. DSMF ¶ 16; (Recording at 1:15–1:25). Johnson also instructed Cross to unlock his door. (Recording at 1:15–1:25). Cross did not hang his phone up nor unlock his door, but Johnson was able to reach his arm into the car, through a small opening in the window, and unlock the door. DSMF ¶ 19; [DE 44–1] at 12–13. Johnson attempted to bring Cross out of the vehicle, but Cross resisted. DSMF ¶¶ 21-22. To remove Cross from the vehicle, Johnson first pulled Cross by his shirt (unsuccessfully), and then by his hair. *Id.* While Johnson and Cross struggled, Johnson told Cross to "get out of the car." *Id*. at ¶ 17.

After Johnson removed Cross from the vehicle, Cross landed facedown on the ground, and Johnson placed his knee in the middle of Cross' back (for a few seconds) while handcuffing him. *Id.* ¶¶ 23–24.

## **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, it is the moving party's "burden to demonstrate the basis for its motion, and [it] must identify the portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The

movant may meet this burden by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*; s*ee also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (The movant may satisfy its burden "by 'showing' or 'pointing out' to the Court that there is an absence of evidence to support the non-moving party's case"). Provided that the moving party meets its burden, the burden then shifts to the non-moving party to show that a genuine issue of material fact exists. *Hornsby-Culpepper*, 906 F.3d at 1311–12.

To establish a dispute of fact sufficient to avoid the entry of summary judgment, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *A.L. ex rel. D.L. v. Walt Disney Parks & Resorts US, Inc.*, 900 F.3d 1270, 1289 (11th Cir. 2018). "However, a mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004). Nevertheless, courts "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Moreover, all reasonable doubts regarding the facts must be resolved in favor of the non-moving party. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

## **ANALYSIS**

In his Second Amended Complaint [DE 1–2], Cross alleges eight causes of action against Johnson and one claim of negligent medical evaluation against Defendant Gregory Tony in his official capacity as Broward County Sheriff ("BSO"). The counts alleged against Johnson include two counts brought under 28 U.S.C. § 1983 – Count III alleging a claim for false arrest and Count

IX alleging a claim for unreasonable use of force.[4] All of the other claims are based on state law. Defendants move for summary judgment on a myriad of grounds. With respect to Cross' § 1983 claims (Counts III and IX), Johnson has established that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Therefore, summary judgment should be granted in Johnson's favor on Counts III and IX of the Second Amended Complaint. Since the remaining counts allege state-law claims, this Court should decline to exercise supplemental jurisdiction over those claims, and consequently, remand this case to state court upon granting summary judgment on Cross' § 1983 claims.

### A. Cross' § 1983 False Arrest Claim

Cross' § 1983 false arrest claim fails because Johnson had probable cause – and at the very least arguable probable cause – to arrest Cross. "To prevail on a claim under § 1983, a plaintiff must demonstrate both (1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998). Cross predicates his false arrest claim on an alleged violation of his Fourth Amendment right to be free from unreasonable search and seizure. But, "when the government has probable cause to arrest someone, a false arrest claim necessarily fails." *Richmond*, 47 F.4th at 1180.

---

[4] Defendants' Motion lists (and seems to analyze) Count III as a state-law claim for false arrest. [DE 47] at 1, 4–7. Plaintiff, in its Response, copies Defendants' list of counts and also identifies Count III as a state-law claim. [DE 56] at 1. However, while it is not abundantly clear whether Plaintiff intended Count III to be a claim under federal or state law, one of the allegations in that count references 42 U.S.C. § 1983, and Defendants' Notice of Removal identifies Count III (along with Count IX) as a § 1983 claim in describing the basis for federal jurisdiction. [DE 1–2] at 14; [DE 1] at 2. Regardless of whether the claim arises under state law or § 1983, the claim fails if the Defendant had probable cause to arrest Plaintiff. *See Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022); *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004).

"Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *D.C. v. Wesby*, 583 U.S. 48, 54 n.2 (2018).  The Supreme Court has noted that "[p]robable cause 'is not a high bar.'" *Id.* at 57 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).  "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to 'ask whether a reasonable officer could conclude ... that there was a substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 902 (quoting *Wesby*, 583 U.S. at 61).

Public officials sued in their individual capacity are entitled to qualified immunity when acting in the scope of their discretionary authority unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known."  *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010)).  Officers act within the scope of their discretionary authority when their actions "(1) [are] undertaken pursuant to the performance of [their] duties, and (2) [are] within the scope of [their] authority."  *Id.* (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).  Johnson demonstrated that he was acting within the scope of his discretionary authority because he was "engaged in all of the challenged actions while on duty as [a] police officer[]" performing a traffic stop on Cross.  *Id.*  As a result, Cross "bears the burden of proving both that [Johnson] violated his constitutional right and that 'the right was clearly established at the time of the violation.'" *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)).

"[T]o establish the defense of qualified immunity for a false arrest claim, . . . 'an officer need not have actual probable cause, but only 'arguable' probable cause.'"  *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734

8

(11th Cir. 2010)).  Arguable probable cause exists when a reasonable officer, "looking at the entire legal landscape at the time of the arrest[], could have interpreted the law as permitting the arrest[]." *Wesby*, 583 U.S. at 68; *see also Brown*, 608 F.3d at 735 ("Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern.").  On the other hand, arguable probable cause does not exist if "the state of the law on the date of the alleged misconduct makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue."  *Washington*, 25 F.4th at 903 (internal quotations and citations omitted).

Here, Johnson had probable cause to stop Cross for a traffic violation.  The undisputed facts establish that Johnson witnessed Cross and Bharat violate at least two traffic laws.  *See* DSMF ¶¶ 6, 12.  Section 316.614, Florida Statutes, declares it "unlawful for any person 18 years of age or older to be a passenger in the front seat of a motor vehicle . . . unless such person is restrained by a safety belt when the vehicle . . . is in motion." § 316.614(5), Fla. Stat. (2015).  The law makes the failure to wear a seatbelt a primary offense thereby permitting an officer to pull an individual over solely for not wearing a seatbelt.  § 316.614(8), Fla. Stat.  Johnson initially signaled to Cross to have his passenger, Bharat, put on a seatbelt.  DSMF ¶ 8.  Once Cross improperly stopped in the middle of the two-lane street, Johnson again saw Bharat without a seatbelt and ordered Cross to pull over.  [DE 45–1] at 2; (Recording at 0:03–0:45).  Bharat's failure to wear a seatbelt as a passenger in the front seat of Cross' vehicle was a nonmoving violation and provided Johnson probable cause to initiate a traffic stop, including to direct Cross to pull his vehicle to the side of the road.

Additionally, under section 316.183, Florida Statutes, "[n]o person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic."

9

§ 316.183(5), Fla. Stat. (2015).  Johnson witnessed Cross come to a complete stop in the middle of a two-lane street.  DSMF ¶ 12.  This conduct also gave Johnson probable cause to pull Cross over for a traffic infraction because Cross was impeding the normal and reasonable movement of traffic.  § 316.183(7), Fla. Stat. ("A violation of this section is a noncriminal traffic infraction, punishable as a moving violation as provided in chapter 318.").  Again, Johnson was thus entitled to instruct Cross to pull his vehicle to the side of the road.

Once Johnson's and Cross' vehicles were stopped side-by-side, Johnson, with his police lights flashing, instructed Cross to "pull over" and "move [his] car up" several times.  *Id.* ¶13; (Recording at 0:02–0:16).  But Cross did not pull over as instructed.  Instead, the undisputed facts show that Cross argued with Johnson (even while claiming that he was going to pull over).  *Id.*  At this point, Johnson had probable cause – and at the very least arguable probable cause – to arrest Cross for violating section 843.02, Florida Statutes.  Cross then "sped off" (rather than complying with the instruction to "pull over" or "moving [his] car up"),[5] thus increasing the probable cause for a violation of section 843.02, Florida Statutes.[6]

---

[5] Defendant's Statement of Material Facts asserts that Cross "sped off," citing to Johnson's deposition for support.  DSMF ¶ 14 (citing [DE 44–1] at 10–11).  Plaintiff does not address this fact (adequately or otherwise) in his Response Statement of Facts; therefore, it can be deemed admitted if it is "supported by properly cited record evidence."  S.D. Fla. L.R. 56.1(c).  The assertion in Defendant's Statement of Material Facts is consistent with Johnson's deposition. The Recording is inconclusive.  At this point in the interaction, the Recording shows no video, only audio.  The audio is consistent with Cross driving, with the engine audible for at least a few seconds.  However, the fact that only approximately thirty seconds elapsed between the end of Johnson's first interaction with Cross and the next time his voice is heard (during which time Johnson, by his testimony, would have gotten back in his car, followed Cross, pulled over, gotten back out of his car, and returned to Cross' window) suggests that Cross likely did not "speed off" very far.  Nevertheless, Cross' initial resistance to the repeated instructions to move his car created probable cause regardless of whether or how far he "sped off."

[6] Cross' refusal to fully roll his window down, unlock his car, and hang up his phone, after he had pulled over and Johnson had approached the second time, arguably further increased the probable cause for a violation of § 843.02, Fla. Stat.

10

That statute states, "[w]hoever shall resist, obstruct, or oppose any officer . . . without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree." § 843.02, Fla. Stat. (2015). "[T]o support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009). "Florida law authorizes arrest for knowingly obstructing an officer in the performance of his duties, including by refusing to obey a police officer's lawful command." *Senko v. Jackson*, 603 F. Supp. 3d 1299, 1315 (S.D. Fla. 2022); *see also* § 843.02, Fla. Stat.; *J.M. v. State*, 960 So. 2d 813, 815 (Fla. 3d DCA 2007).

At the time Johnson ordered Cross to pull over and move his car up, he was engaged in the lawful execution of a legal duty – enforcement of traffic laws – having witnessed Cross and Bharat each commit a traffic violation. Having probable cause to believe those offenses were committed, Johnson lawfully ordered Cross to pull his vehicle off the middle of a two-lane street. Cross did not move his vehicle from the road and instead argued with Johnson. Cross, through his conduct, obstructed and resisted Johnson's orders while Johnson was engaged in the lawful execution of his duties (i.e., performing a lawful traffic stop). He further compounded the resistance by speeding off and later refusing commands to roll his window down, unlock his door, and hang up his phone. Consequently, a reasonable officer in Johnson's situation could conclude that there was a "substantial chance" Cross had committed a violation of section 843.02. Undoubtedly, Johnson,

when "looking at the entire legal landscape at the time of" Cross' arrest "could have interpreted the law as permitting the arrest[]."[7] *Wesby*, 583 U.S. at 68.

Cross' argument that, at the time Johnson directed Cross to pull his car off the road, Johnson was merely "on the job" rather than "in the lawful execution of any legal duty" is unavailing. In support, Cross cites to *Jay v. State*, 731 So. 2d 774 (Fla. 4th DCA 1999) and *K.A. v. State*, 12 So. 3d 869 (Fla. 4th DCA 2009). Both cases, however, are readily distinguishable. In *Jay*, the officer arrested the appellant because the appellant told two women, who were approaching an unmarked police vehicle, "don't get in the car, he's a cop." *Jay*, 731 So. 2d at 774. The Fourth District Court of Appeal found that the two women did not agree to do anything illegal before walking away. *Id.* at 776. Thus, "there was no criminal activity occurring at the time" the appellant told the women to not enter the vehicle, and at that time, the officer "was merely on the job and not engaged in the lawful execution of any legal duty." *Id.*

The Fourth District Court of Appeal came to a similar conclusion in *K.A.* There, officers arrested a juvenile after he screamed in the middle of a crowd in a parking lot, while officers converged in the area, "Why are you leaving?" and "Don't leave. They can't do anything about it." *K.A.*, 12 So. 3d at 870. The District Court held that the juvenile's words did "not rise to the

---

[7] Plaintiff's argument that Plaintiff may not have known that Johnson was a police officer when he ordered Plaintiff to move his car is unavailing. According to Defendant's Statement of Material Facts, Johnson had activated the lights in his unmarked vehicle, a fact that Plaintiff does not adequately refute. DSMF ¶ 14. A review of the Recording clearly shows the blue lights flashing at the top of Johnson's windshield as Cross argues with him about "pulling up." (Recording at 0:02–0:16). Thus, a reasonable officer could conclude that Cross was knowingly resisting his order. While Plaintiff's argument that he might not have seen the lights could bear on whether the State could prove his guilty beyond a reasonable doubt, the question here is whether Johnson had probable cause to believe the offense had occurred. From the point of view of a reasonable officer considering all of the circumstances, he did.

12

level of obstruction" and there was "no evidence the officer asked [the juvenile] for his assistance." *Id.* at 872–73.

The Recording belies Cross' contention that Johnson was engaged in mere on-the-job activities during the first encounter between Johnson and Cross. Florida courts have consistently maintained that there is a distinction between a police officer "in the lawful execution of a legal duty and a police officer who is merely on the job." *A.R. v. State*, 127 So. 3d 650, 654 (Fla. 4th DCA 2013); *see also Jay*, 731 So. 2d at 775; *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995). The former entails an officer "1) serving process; 2) legally detaining a person; or 3) asking for assistance in an emergency situation." *A.R.*, 127 So. 3d at 654.

Here, Johnson had observed Cross and Bharat commit traffic infractions and was attempting to address those infractions when he gave his order to Cross to pull over. Indeed, Cross even concedes that "Johnson most certainly had probable cause to stop and detain both Plaintiff and his passenger long enough to issue a citation." [DE 56] at 8. Furthermore, when the Recording begins, Johnson's vehicle was next to Cross', his police lights were activated, and Johnson gave multiple commands to Cross to pull over and move his vehicle. (Recording at 0:02–0:16). Therefore, Johnson's actions during this first encounter, when the two vehicles were side-by-side, were not mere on-the-job activities.[8]

The Court also cannot accept Cross' argument that it "should rule that [Cross] was subjected to an illegal arrest as Judge Robert Diaz did in the criminal trial court." [DE 56] at 3. It

---

[8] Cross also argues that Johnson testified he did not intend to initiate a traffic stop. [DE 56] at 9. But this testimony is immaterial. First, in determining probable cause, the Court looks at objective facts, not the officer's subjective intent. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010). Second, the fact that Johnson did not intend to initiate a traffic stop when he initially signaled to the passenger to put his seat belt in no way undermines his ability to do so once Cross had stopped and argued with him and does not make Johnson's later direction to pull over any less a "lawful execution of legal duty."

is wholly unclear from Cross' response whether he is suggesting that the state court's ruling has binding or preclusive effect on this case or whether Cross cites Judge Diaz's ruling for persuasive effect. To the extent Cross believes the state court's ruling controls the outcome of this case, Cross does not provide the Court with any authority or analysis supporting the notion that the Court is bound by the state court's holding or that the state court's findings have preclusive effect. Moreover, the burdens of proof in the two cases are different. In directing a verdict for Cross in his criminal case, the state court needed to assess whether the state had met its burden of proving the charged offenses "beyond a reasonable doubt." *Dausch v. State*, 141 So. 3d 513, 517 (Fla. 2014).

Here, it is Plaintiff's burden to prove his case by "a preponderance of the evidence," *Johnson v. Fla.*, 348 F.3d 1334, 1347 (11th Cir. 2003), which requires a showing that Johnson did not even have arguable probable cause for an arrest. Finally, to the extent Cross urges the Court to be persuaded by Judge Diaz's ruling, I must respectfully disagree based on the factual record before me. It appears that the state court based its ruling on the fact that "there was no order given by the officer to pull his vehicle over" thereby negating the assertion that Cross did not obey a lawful order. [DE 49–1] at 42–43. However, from the Recording – and the undisputed facts on the record here – is clear that Johnson did command Cross to "pull over" several times. (Recording at 0:05–0:45); [DE 45–1] at 2.

Refusing an officer's order to move to the side of the road after a traffic violation may seem like a minor offense. However, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Prior to Cross' arrest, Cross refused multiple orders to pull over, refused to unlock his door, and

14

refused to hang up his phone. As a result, Johnson had not just arguable probable cause but actual probable cause to arrest Cross. Therefore, Johnson is plainly entitled to qualified immunity on Cross' § 1983 false arrest claim, and, even putting qualified immunity aside, Cross' claim fails.

### B. Qualified Immunity for § 1983 Excessive Force Claim

Johnson is entitled to qualified immunity against Cross' excessive force claim. As explained earlier, Johnson demonstrated that he was acting within the scope of his discretionary authority when he ordered Cross to pull over and to get out of the vehicle. Consequently, Cross "bears the burden of proving both that [Johnson] violated his constitutional right and that 'the right was clearly established at the time of the violation.'" *Washington*, 25 F.4th at 898 (quoting *Barnes*, 669 F.3d at 1303).

There are two types of excessive force claims, artificial and genuine. An artificial claim of excessive force is when a plaintiff alleges "that an officer's use of force is excessive only because an arrest was not supported by probable cause." *Richmond*, 47 F.4th at 1180. On the other hand, a genuine claim of excessive force "is a claim that—irrespective of an officer's probable cause to make an arrest—the officer used excessive force." *Id.* The Eleventh Circuit has consistently held that an artificial claim of excessive force "is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000); *see also Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331 (11th Cir. 2006); *Richmond*, 47 F.4th at 1180–81.

In their Motion, Defendants analyze Cross' excessive force claim as if Cross brought a genuine claim. *See* [DE 47] at 11–16. Cross does not respond to Defendants' argument (or separately address his excessive force claim at all). Instead, in his response, Cross states "[s]ince the success of [the Motion] is entirely dependent upon whether the court determines that Johnson

15

had probable cause to arrest [Cross], [Cross'] analysis will exclusively focus on why Johnson did not have probable cause." [DE 56] at 3.  Therefore, Cross is apparently not asserting a genuine claim of excessive force, but rather, an artificial claim.  To the extent Cross was raising a genuine claim prior to Defendants' Motion, he has now abandoned that theory, and Defendant's argument is essentially unopposed.  *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.") (quoting *Kramer v. Gwinnett County, Georgia*, 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (alteration in original)); *see also Ewing v. Carnival Corp.*, No. 19-20264-CIV, 2023 WL 2524530, at *3 (S.D. Fla. Mar. 15, 2023) ("A party's failure to meaningfully respond to the opposing party's responsive counterarguments constitutes a concession of the counterargument's persuasiveness."); *Guzman v. City of Hialeah*, No. 15-23985-CIV, 2016 WL 3763055, at *3 (S.D. Fla. July 14, 2016) ("A plaintiff who, in her responsive brief, fails to address her obligation to object to a point raised by the defendant implicitly concedes that point.").

Turning to the merits of Cross' artificial claim of excessive force, as discussed above, Cross' artificial claim is subsumed within his claim for false arrest and is not a discrete excessive force claim.  *Jackson*, 206 F.3d at 1171.  Having found probable cause for Plaintiff's arrest, for the reasons described above, the excessive force claim fails for the same reasons the false arrest claim fails.  Consequently, Johnson is entitled to summary judgment on Cross' excessive force claim.

### C. Plaintiff's State Law Claims

Having found that Defendants should prevail on the federal claims, all that remains are the state-law claims.  The Court should decline to exercise its supplemental jurisdiction over these remaining claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise

supplemental jurisdiction over a claim under [28 U.S.C. § 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1568 (11th Cir. 1994) ("Section 1367(c) gives a court *discretion* to dismiss a supplemental claim or party when 'the district court has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

The Supreme Court has promulgated four factors for lower courts to consider when deciding whether to exercise supplemental jurisdiction after all the federal claims in the case have been dismissed. Courts must consider comity, convenience, fairness, and judicial economy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–726 (1966); *see also Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 775 (11th Cir. 2016). Comity and fairness weigh in favor of remand, as Cross' remaining claims are all grounded in state law and involve applying state law to the actions of a state law enforcement officer. Convenience likewise weighs in favor of remand (or at least is neutral). The case was originally filed in Broward state court and all of the relevant parties and witnesses are residents of Broward County. *See* [DE 1–2] at 3. Judicial economy arguably weighs in favor of retaining jurisdiction, given that the case reached the summary judgment stage and Plaintiff's response appears to concede that the success of the Motion "is entirely dependent" on the finding of probable cause. [DE 56] at 3. However, because the parties provided scant analysis on the remaining claims, I find it prudent to remand.

Significantly, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)); *see also Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1226 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state

claims over which they decline to exercise supplemental jurisdiction."). And declining to exercise supplemental jurisdiction can be appropriate even when a federal court disposes of the federal claims at summary judgment. *See Murphy v. Fla. Keys Elec. Co-op. Ass'n, Inc.*, 329 F.3d 1311, 1320 (11th Cir. 2003) (dismissing maritime tort claim brought under the district court's supplemental jurisdiction after granting summary judgment on defendant's contribution claim); *Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (permitting district court to exercise its discretion to remand remaining state claims after disposing of all federal claims on summary judgment). Thus, the Court should remand Plaintiff's remaining state-law claims.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 47] be **GRANTED** as to Plaintiff's federal claims and **REMAND** Plaintiff's remaining state claims to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable David S. Leibowitz, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 18th day of June 2024.



Jared M. Strauss
United States Magistrate Judge

18